## ATKINSON v. UNITED STATES.
### No. 9879.

Circuit Court of Appeals, Eighth Circuit.
Oct. 11, 1934.

---

See, also, 70 F.(2d) 515.

John J. Stoller and Mr. W. A. Marin, both of Minneapolis, Minn., for appellant.

John G. Remey, Sp. Asst. to the Atty. Gen. (George F. Sullivan, U. S. Atty., and George A. Heisey and Linus J. Hammond, Asst. U. S. Attys., all of St. Paul, Minn., on the brief), for the United States.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The facts essential to the determination of this controversy may be briefly stated. Appellant filed income tax returns with the collector of internal revenue for the years 1924 and 1925, paying tax thereon of $300.90 for the year 1924, and $13,591.62 for the year 1925. The report of an examining internal revenue agent indicated a deficiency in tax of $10,352.88 for the year 1924, and an overassessment of $12,123.10 for the year 1925. March 26, 1927, the Commissioner of Internal Revenue mailed to appellant a registered letter in ·accordance with section 274 (a) of the Revenue Act of 1926 (26 USCA § 1048), advising him of the deficiency and overassessment above stated. In response to this notice, appellant, through authorized representatives, filed protest, and on May 24, 1927, a brief in support of this protest of the deficiency determined, and the additional tax proposed for 1924. This brief was filed by W. H. Kilbourne. May 10 and June 27, 1927, conferences were held in the office of the Commissioner with appellant's representatives, Kilbourne and Love. As a result of these negotiations, and a consideration of evidence presented, the overassessment for 1925 was allowed to stand, and the deficiency for 1924 was reduced to $3,647.35. The agreement form, consenting to the determination of the tax, and the immediate assessment of the deficiency in this amount, was signed by Kilbourne as appellant's representative. At the trial, appellant stated that Love and Kilbourne had authority to act for him the same as if he were acting for himself with regard to matters pertaining to his tax liability for the years 1924 and 1925, and that they had authority to execute any agreements signed in connection with this matter.

Thereafter, September 8, 1927, the Commissioner advised appellant that "the revised deficiency of $3,647.35 will be assessed on the next assessment list for your district on the basis of the consent agreement signed by your representative Mr. W. H. Kilbourne." In November, 1927, this deficiency was accordingly assessed, and, November 16, 1927, a certificate of overassessment in the sum of $12,123.10 was issued and mailed to the taxpayer. An account was stated crediting this deficiency, amounting, with interest, to $4,120.78, against said overassessment of $12,123.10, and showing a balance of $8,002.32. On the same date, this balance was refunded to appellant by check, with interest in the sum of $860.14. Appellant accepted this refund check, cashed it, and retained the proceeds.

Nearly four years later, it appears, appellant filed a claim for refund of this sum of $4,120.78. The date of filing does not appear, and the nature of the claim, which was not produced, is gathered only from correspondence. The Commissioner denied the claim, and on June 6, 1932, appellant filed this suit. The District Court held that he was not entitled to recover, and this appeal followed.

The character of the suit filed is thus stated by appellant in his brief: "This action was instituted for the recovery of an over-payment of income taxes for the year 1925, of $4,120.78, as evidenced by an implied contract based on the issuance and delivery by appellee to appellant of a certificate of the Commissioner of Internal Revenue."

Examination of the complaint convinces that such is the gist of the action. It is true

216

that alleged errors in determining the deficiency for the year 1924 are argued, but, inasmuch as the suit is based upon the alleged implied contract evidenced by the issuance of the Commissioner's certificate as heretofore stated, the validity or invalidity of the items originally considered by the Commissioner in computing the deficiency is immaterial and need not be discussed here. That certificate does not stand alone, but forms a part of an account stated and settled, after consideration of the evidence, and repeated conferences between the Commissioner and authorized representatives of appellant. After having accepted this settlement and the benefits thereof, without objection for the period, at least, from November 16, 1927 to some time in the spring of 1931, appellant seeks to recover this balance of the overassessment for the year 1925, the agreement of settlement to the contrary notwithstanding.

■■■ This contention of appellant seems to be based mainly, if not entirely, upon the decision of the Supreme Court in Bonwit Teller & Company v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018. In that case the commissioner had finally determined that the taxpayer had overpaid its tax in a stated amount, and had withheld a refund for alleged failure of the taxpayer to comply with the terms of the statutes relating to waiver. The government further urged that the claim was barred by limitation under the provisions of section 3226, R. S., as amended (26 USCA § 156). The court held: "The action is not for the overpayment of the tax in 1919, but is grounded upon the determination evidenced by the certificate issued by the Commissioner May 12, 1927. Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought." Loc. cit. page 265 of 283 U. S., 51 S. Ct. 395, 398.

Here, as there, the suit was not brought for the recovery of an internal revenue tax alleged to have been erroneously collected, but upon the subsequent determination of the Commissioner. The crucial difference between the Bonwit Teller & Co. Case and that here under consideration is that, in the former, there was an account stated, while in the instant case there is an account settled. In our opinion, this wide distinction is decisive of this controversy.

In R. H. Stearns Co. v. United States, 291 U. S. 54, 54 S. Ct. 325, 78 L. Ed. 647, the Supreme Court held:

"To constitute an account stated, a balance must have been struck in such circumstances as to import a promise of payment on the one side, and acceptance on the other.

"Mere rendition to the taxpayer of a certificate of overassessment did not evince a promise to refund, when by his request the overpayment was to be applied against another tax, and this was subsequently and in due course accomplished, and the results accepted by him. Bonwit Teller & Co. v. United States, 283 U. S. 258 [51 S. Ct. 395, 75 L. Ed. 1018], distinguished."

In the body of the opinion Mr. Justice Cardozo says: "Upon a computation of the credits the final balance was ascertained to be in favor of the Government. The balance thereby fixed was reported to the taxpayer. After the schedule of refunds and credits had been signed by the Commissioner, the collector transmitted to the taxpayer a new statement of account by which it was clearly made to appear that the overassessment had been credited upon the tax for 1917, and that after such credit there was still owing from the taxpayer a balance of $5,829.07, which, together with the accrued interest, was thereupon collected. Then for the first time was there a final ascertainment of the balance upon consideration of both sides of the account, the debits and the credits. The taxpayer did not object to the account as submitted in its final form. Far from objecting, it paid the resulting balance, and by this act as well as by silence conceded the indebtedness. Indeed there was more than an account stated; by force of voluntary payment there was also an account settled. Lockwood v. Thorne, 18 N. Y. 285, 292."

While there the taxpayer paid, instead of accepting payment, in silence, and without objection, the principle controlling the two cases is identical.

In Daube v. United States, 289 U. S. 367, 370, 53 S. Ct. 597, 598, 77 L. Ed. 1261, we find the following significant language: "The Commissioner did not inform the taxpayer that the tax had been overpaid in a determinate amount. The taxpayer did not give assent either expressly or by silence to the outcome of the audit. The essentials of an account stated in any strict or proper sense are lacking altogether."

In the case before us, all the essentials are present, not only of an account stated, but of an account settled. The Commissioner did inform the taxpayer, and the taxpayer did expressly give assent to the outcome of the audit, as well as by accepting the cash settlement without objection and by silence for years

thereafter. That, to set aside such an account settled, it is incumbent upon a party to act promptly in carrying the burden of proving substantial and sufficient facts in support of his contention is established by abundant authority. The Court of Claims has recently so held.

"The plaintiff received the check for the balance shown to be due by the account, and cashed it without making any objection thereto until almost six years later when this suit was commenced. Instead of being an account stated in favor of the plaintiff, it was really an account settled. Cf. R. H. Stearns Co. v. United States, supra." Holmes Mfg. Co., Inc., v. United States (Ct. Cl.) 6 F. Supp. 438, 439.

"In this particular case, the account showed a balance of a certain amount in favor of plaintiff for which it received a check issued in settlement. No complaint having been made with reference thereto for over five years, it must be considered an account settled." Pratt & Whitney Co. v. United States (Ct. Cl.) 6 F. Supp. 574, 575.

The lapse of time is thus stressed as establishing assent and, thereby, the consummation of a contract of settlement. Here, in addition thereto, we have the agreement signed by appellant's duly authorized agent. We perceive no reason why such principles should not apply with equal force to dealings with government in the field of taxation, as to transactions between private parties in the ordinary course of trade. Appellant suggests that the trial court failed to meet the requirements of section 764, title 28 USCA, in filing opinion, findings, and conclusions in this suit against the United States. That section reads as follows: "Opinion, findings, and conclusions in suit against United States. It shall be the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. If the suit be in equity or admiralty, the court shall proceed with the same according to the rules of such courts."

While the arrangement and title of the court's findings are somewhat informal, an examination of the contents discloses that the facts are set out quite fully, covering nearly four pages of the printed record. Thereafter follows an exhaustive discussion of facts and issues, with citation of authorities in opinion form, in the course of which the court found that "the simple recital of the undisputed facts irresistibly leads one to the conclusion that plaintiff is now estopped to contend that the adjustment and compromise of the 1924 and 1925 tax years was not final." This recital and discussion concludes thus: "The court adopts the foregoing as its findings of fact and conclusions of law, the court finds: (1) That plaintiff take nothing by its cause of action herein and that the same be dismissed. (2) Let judgment be entered accordingly."

Formal compliance with this section has not been rigidly exacted where the filing expressly or impliedly finds the necessary facts, enables the public and the appellate court to find on the record the reasons for such findings, and gives judgment accordingly. United States v. Swift (C. C. A.) 139 F. 225; United States v. Hyams (C. C. A.) 146 F. 15; United States v. Tinsley (C. C. A.) 68 F. 433.

While we do not approve, as a general practice, the informality of the opinion, findings, and conclusions filed in this case, we do not consider it so serious as to require reversal. It follows from what has been said that the judgment appealed from should be affirmed, and it is so ordered.