**AURICCHIO v. UNITED STATES.**

No. 2343.

District Court, E. D. New York.

Feb. 10, 1943.

185

Soloway & Soloway, of Brooklyn, N. Y. (Julius Soloway, of Brooklyn, N. Y., of counsel), for plaintiff.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Alvin J. Rockwell, Eugene E. Angevine, Sp. Assts. to the Atty. Gen., and Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant.

CAMPBELL, District Judge.

This suit was brought by the plaintiff to recover the sum of $4,964.16 plus interest, collected by the Collector of Internal Revenue as taxes on the processing of sunflower oil under Section 602½ of the Revenue Act of 1934, and under that section as amended by Section 702 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 778, 779, between October 19th, 1934, to February 13th, 1937.

During the time in question the taxpayer dealt in edible oils at 253 Hamilton Avenue, Brooklyn, New York, and for that period of time he filed no federal tax returns of any kind.

After an exhaustive investigation, a Deputy Collector of Internal Revenue, pursuant to Section 3176 of the Revised Statutes, 26 U.S.C.A. Int.Rev.Code § 3612, filed on behalf of the plaintiff a tax return for the entire period relating to the plaintiff's liability with respect to the processing of sunflower oil. In August, 1938, the Commissioner of Internal Revenue made an assessment against the plaintiff in the aggregate sum of $61,208.40 made up as follows: $44,316.51 for processing taxes on 1,477,-217 pounds of sunflower oil at 3 cents per pound, $11,079.12 for a 25% penalty and $5,812.77 interest accrued to the date of assessment. Thereafter the sum of $4,984.16 was collected from the plaintiff in partial satisfaction of the assessment. Thereafter, and on October 25th, 1939, plaintiff filed a claim for a refund on the asserted ground that "Deponent never processed any Sun Flower oil". The Commissioner, by letter of November 14th, 1939, gave notice to the plaintiff of the rejection of the claim for refund.

This action followed.

By Section 602½ of the Revenue Act of 1934 a tax of 3 cents per pound was imposed upon the "first domestic processing" of sunflower oil and other oils, and "processing" was defined as any "use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed". By Section 702 of the Revenue Act of 1936 the tax on sunflower oil with respect to sunflower oil imported into the United States after August 20th, 1936, was terminated, but the tax was continued as to sunflower oil brought into the United States prior to that date.

The mixing by the taxpayer of sunflower oil with coloring and flavoring matter in the production of an article intended for sale constituted a "processing" within the meaning of the statute, and the taxpayer became liable for a tax of 3 cents per pound measured upon the sunflower oil which entered into the processing.

A presumption of correctness attaches to the determination of the Commissioner of Internal Revenue that the taxpayer is liable for the processing taxes of the character here involved. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L. Ed. 212.

The taxpayer, as plaintiff and moving party has the burden of rebutting that presumption, and establishing his case, that is, that he is entitled to a refund of the amount of $4,964.16 and did not become liable for the payment of the taxes with respect to the processing of sunflower oil at 3 cents per pound during the taxable period.

Neither in his claim for a refund, nor in this action, did the taxpayer challenge the computation of the amount of the tax, contend that the sunflower oil purchased by him was not subject to the tax, or allege any ground of recovery other than that he did not process sunflower oil, that is, that he did not mix sunflower oil with coloring or flavoring matter, or any other substance.

A taxpayer is limited to the ground of recovery asserted in his claim for refund. Real Estate Land Title & Trust Co. v. United States, 309 U.S. 13, 17, 18, 60 S.Ct. 371, 84 L.Ed. 542; United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025.

It is true, that no witness was produced by the Government, who saw the plaintiff process sunflower oil.

It was impossible to determine who were the customers by an examination of the books, or from the testimony given by the plaintiff while on the stand.

The following facts, produced on behalf of the Government, rise much higher than mere suspicion, and the fair inference to be drawn therefrom, in view of all the evidence, oral and documentary, which I have considered supports the assessment made by the Commissioner of Internal Revenue. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; United Business Corporation v. Commissioner of Int. Rev., 2 Cir., 62 F.2d 754, certiorari denied 290 U.S. 635, 54 S.Ct. 53, 78 L.Ed. 552.

The following cases cited on behalf of the plaintiff are all distinguishable on the facts. In re Trustees System Co. of Louisville, D.C., 30 F.Supp. 361; Bernheim Distilling Co. v. Mayes, D.C., 268 F. 629; Wilson v. Eisner, 2 Cir., 282 F. 38; Hyams v. United States, C.C., 139 F. 997, affirmed 1 Cir., 146 F. 15; Lunsford v. Commissioner of Internal Revenue, 6 Cir., 62 F.2d 740.

The taxpayer, between October 19th, 1934, and February 13th, 1937, purchased 1,484,164 pounds of sunflower oil which had not been processed in the United States before he purchased and receive it.

Between the same dates, the taxpayer, purchased 892 pounds of soya sen oil; 93,-236 pounds of corn oil; 8,346.36 pounds of olive oil; 20,533 pounds of rape seed oil; and 43,012 pounds of cottonseed oil, making in the aggregate 166,019.36 pounds of other oils.

The taxpayer also purchased cans of the capacity (in gallons) of 120,082 which were lithographed as containing olive oil.

The capacity of the cans purchased by the taxpayer lithographed as containing olive oil, based on 7.7 pounds to the gallon, was 924,631.4 pounds.

The taxpayer purchased only cans of the capacity (in gallons) of 3,690 labeled as containing sunflower oil.

The taxpayer purchased coloring and flavoring matter in sufficient amounts to treat an immense quantity of sunflower oil and such substances were readily procurable, being handled by several companies.

A transcript from the taxpayer's books, made by Deputy Collectors, two in number, in June 1937, shows total sales of oil during the taxable period of 219,983½ gallons, 1,693,871 pounds, but did not disclose any sales by the taxpayer of coloring or flavoring matter.

Between the time of the taking of such transcript, and November 8th, 1937, the taxpayer burned his sales records.

Sunflower oil differs in color, aroma and taste from olive oil, and the ordinary purchaser, including the Italian purchaser, can readily distinguish between them.

By a process of mixing sunflower oil with coloring and flavoring matter, the color, aroma and taste of olive oil may be simulated, and the ordinary purchaser, including the Italian purchaser, may be deceived into the belief that it is olive oil, which at least until recently Italian purchasers have preferred to other types of oil.

I have not considered the results of the investigation or visits of the representatives of the Health Department of the City of New York, to plaintiff's places of business, or the results of the prosecutions as proof of the processing on which the tax in question was levied, but I have considered the convictions of plaintiff in the State Court for putting false labels upon an article of merchandise, and violation of the Sanitary Code, solely as to the effect they have on the weight which is to be given to the testimony of the plaintiff, but not for any other purpose. I have considered the statement the plaintiff is alleged to have made about instructing James De Vito, the person to whom he claims he sold the business, at 253 Hamilton Avenue, how to conduct the business, where to buy the oil, and the coloring and flavoring matter, and how to mix the substances with the oil.

The mixing of sunflower oil with coloring and flavoring matter is done in the same way as it is done with the other oils herein mentioned.

I have considered the testimony of the city chemist, not as to his analysis of the articles seized in those cases, but, the testimony he gave generally as to oils.

Except, as I have indicated, the testimony of the representatives of the Health Department of the City of New York, and its chemist, are stricken out.

Recapitulating the evidence, the taxpayer, during the period in question, purchased 1,484,164 pounds of sunflower oil, and only 8,346.36 pounds of olive oil, and 166,019.36 of all oils other than sunflower oil. He also purchased cans lithographed as containing olive oil of a capacity of at least 924,631.4 pounds, and other cans not identified as olive oil cans, a total capacity of

707,837.9 pounds. Of these, cans of a total capacity of only 385 pounds were labeled as containing sunflower oil.

Assuming, but not finding, that all of the non-olive oil cans were used by the taxpayer for sunflower oil, this would leave 773,000 pounds of sunflower oil which must have been used to fill olive oil cans. Certainly the taxpayer did not purchase the large quantity lithographed as olive oil cans, which cost more than the other cans, to use them for sunflower oil, unless, he desired, by processing the same, to use them for sunflower oil processed to simulate olive oil.

I have considered the conviction of the plaintiff in this Court for failure to make income tax returns, and I have considered that and the convictions in the State Court, solely in determining the weight and credence I will give to his testimony, but, not as any proof of the facts here at issue.

All that is offered by plaintiff to rebut the presumption of the validity of the assessment, is the uncorroborated testimony of the plaintiff that he did not process any sunflower oil during the period in question, and that he did not sell any coloring or flavoring matter, but sold oil to peddlers, and gave them cans and coloring and flavoring matter, notwithstanding the taxpayer had a mixing tank, and was equipped for processing, while there is no evidence that any of the peddlers were so equipped. That story is one that is so improbable, that I do not believe it, and I reject it, and in addition, because of the convictions of the plaintiff, I cannot accept his unsupported testimony against the inferences that must be drawn from the proven facts.

The presumption of correctness of the Commissioner's assessment is a rebuttable one, but, in the case at bar, plaintiff did not present evidence sufficient to require defendant to go forward with proof of the correctness of the assessment, but, defendant has done so, and has affirmatively established the assessment.

Although plaintiff did not base his claim for refund on the amount of the assessment, and cannot raise it now, it does appear that a few purchases of sunflower oil were made subsequent to August 20th, 1936, and, if the oil had been imported subsequent to that date no processing tax would be applicable as to that small quantity. The testimony of several witnesses was, that their companies imported no sunflower oil after August 20th, 1936, when the import tax had become effective, which appears to have been the general practice.

In any event, according to the schedules of purchases in evidence, the quantity of sunflower oil purchased by plaintiff, prior to August 21st, 1936, far exceeds the poundage necessary to support the $4,964.-16 processing tax, in issue here.

A judgment should be entered in favor of the defendant, dismissing the complaint with costs.