Timothy S. Hogan, Cincinnati, for appellant.

Paxton & Seasongood, Cincinnati, for appellee.

## LIEN v FECHHEIMER

Ohio Appeals, 1st Dist.,
Hamilton Co.

No. 6082. Decided March 16, 1942.

## OPINION

By ROSS, J.

This case is presented to this court as an appeal on questions of law as to the first cause of action stated in the petition and an appeal upon law and fact as to the second cause of action.

The first cause of action as well as the second cause of action, embodying a cause in chancery, were submitted to the trial court without a jury. The court made a separate finding of facts and law and entered final judgment dismissing the entire petition.

Many of the important and controlling facts are found in a stipulation.

At the time of the death of S. Marcus Fechheimer, March 23, 1932, he was the owner of 91 shares of the capital stock of The Guardian Trust Company of Cleveland, Ohio, of the par value of $100 per share and such shares were acquired at a time when the constitutional and statutory requirements as to double liability were in force.

Mr. Fechheimer died testate, a resident of Florida, and by his will it was provided that his son Marcus Fechheimer should receive a legacy of $100,000.00, to be paid him in cash or securities. The testator's widow, defendant herein, received the residue of the estate by such will. On April 13, 1932, the widow of the testator and her son, executors named in the will, were appointed as such by the county court of Valusia, Florida.

On June 10, 1933. the executors of the testator's estate, the defendant and the testator's son, Marcus Fechheimer, filed their final account with the county Judge of Valusia County, Florida, stating in an affidavit attached thereto, that all debts and bequests involved in the estate had been paid and that distribution had been effected. All persons interested had a right to rely upon such statements.

Marcus Fechheimer, the son, died April 19, 1935. Previous to his death, he had received in full the legacy left him in the will of his father, no part of which included the stock here involved.

There is evidence that in spite of such account and affidavit, full distribution of the assets was not made until later. This is immaterial to the issues here presented. The executors were discharged August 6, 1934.

The defendant remained a resident of Florida until the fall of 1936. This is admitted by defendant. She was personally served in this action and the court has full jurisdiction over her person.

Dividends on the stock involved were sent from time to time after the death of the testator in Cincinnati, Hamilton county, payable to him, and were ultimately absorbed by the estate.

It is apparent that neither the Trust Company nor the Superintendent of Banks was aware until shortly before the filing of this action that the stockholder had died. In fact as late as May 10, 1934 the Superintendent of Banks instituted suit against the testator in person under the mistaken belief that he was still alive. Letters demanding payment of an assessment upon the stock were mailed to the testator at the address given by testator in possession of the bank, to-wit: 313 Vine Street, Cincinnati, Ohio. These letters were sent between the 15th of June, 1933 and December 24, 1934.

Two things are evident from these facts:—First, the Trust Com-

pany and Superintendent of Banks were entirely ignorant of the death of the testator, or any fact which would have caused the date of such death to be known; and, second, there was certainly, to say the least, no effort made upon the part of the executors of the estate to advise either the Trust Company or the Superintendent of Banks of the fact of such death. It cannot be conceived that these dividends and notices were ignored or went astray. The natural inference is that there was a studied effort to conceal the death of the testator from those interested, at least. aftter it became apparent that such knowledge would affect the estate or defendant adversely.

On February 27, 1933, the Trust Company suspended payment to its depositors. On April 8, 1933, a Conservator was appointed and the Trust Company ceased doing business. On June 15, 1933, the Superintendent of Banks of Ohio levied an assessment upon the stock and sent the notices noted before.

Marcus Fechheimer, son of the testator, and a co-executor was a partner in the firm of Benjamin D. Bartlett & Company, located at 313 Vine Street, Cincinnati, Ohio, the address given by the testator to the Trust Company, and to which place notice of assessments were sent.

There are many other facts appearing both in the stipulation, evidence, findings of the Court and briefs of counsel, none of which are germane to the issues considered to be involved in the view of the case herein taken.

Much of the argument is devoted to matters wholly extrinsic to that which is necessary to a determination of the liability of the defendant.

At the time involved in all these matters, double liability was a contractual obligation incident to the ownership of stock in a bank. It followed the stock wherever it went. It is quite natural that those owning such stock or entitled thereto should desire to avoid such liability if possible and the effort of the defendant to disclaim its ownership and consequent liability is perfectly natural. As will appear, it becomes unimportant where the legal title to such stock rests today. It is obvious that it is either in the executors or the defendant. It can be nowhere else. It certainly was not in the legacy to the son. That was paid, all debts were paid, so that it either was never actually transferred by the executors to the defendant, or it was transferred to defendant.

One thing is certain, the residuary legatee, co-executor, widow of the testator and defendant herein received the entire residue of the assets of the estate, and that liability for the assessment attaches either to the executors or such residuary legatee.

Suppose the legal title to the stock still remains in the executors. They have nothing with which to pay the liability which is a charge against the estate. Gieske v Marin, 123 Fla. 870, 168 So. 820. The defendant has all the assets which should respond to such charge. She is liable in equity to account for such charge. Andrews v Bank, 260 N. W., 849, at 852 and 853, 219 Iowa 1244.

If it was transferred, she is liable at law.

It is contended that the claim should have been presented to the executors. The cause of action consisting of a legal right and its violation did not exist at the time the executors had filed their final account, June 10, 1933. The assessment was not made until June 15,

1933, and there could be no violation of the right to have it paid until after the executors or the defendant became aware through notice or otherwise of the claim and failed or refused to pay. Such failure or refusal would constitute the other element of the cause of action. The mere existence of the right does not create the cause of action. There must also be a violation of that right. I Am. Jur., (sec. 3) 405; Durham v Spence, L. R. (6 Ex. Cas.) 46. The violation which completes the cause of action is notice of the assessment and failure or refusal to pay. Gieske v Marin, supra.

So that the claim of ▮▮▮▮▮ the defendant as to the lack of presentation to the executors is futile as a defense.

It will be noted that the defendant's counsel in their brief claim that the defendant was a non-resident of Ohio until the fall of 1936. This action was commenced November 20, 1937. Regardless of when the cause of action arose after June 15, 1933, by failure of defendant to pay after notice, certainly the defendant has completely failed to sustain the burden of proving the running of any statute sufficiently long during her presence in the state to bar this action under such circumstances. §11228 GC; Stanley v Stanley, 47 Oh St 225.

The defendant is, therefore, liable in equity for the payment of the assessments.

A decree may be taken accordingly upon the second cause of action.

The judgment of the court of common pleas is affirmed as to the first cause of action.

MATTHEWS, PJ., & HAMILTON, J. concur.